# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN C. PROPHET, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0492 |
| | § | |
| JOAN MYERS, MYERS AND | § | |
| ASSOCIATES, P.C., and FORD | § | |
| MOTOR CREDIT COMPANY, LLC, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is a Motion for Summary Judgment ("Motion") [Doc. # 28] filed by Defendants Joan Myers ("Myers") and Myers and Associates, P.C. ("M&A"). Plaintiff John Clayton Prophet has responded [Doc. # 29] and Defendants have replied [Doc. # 30]. Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that Defendants' Motion should be **granted**.[1]

---

[1] Defendants have also filed a Motion to Strike Plaintiff's Summary Judgment Evidence [Doc. # 31] ("Motion to Strike"), to which Plaintiff has responded [Doc. # 32]. Defendants object to Plaintiff's counsel's use of leading questions in eliciting Plaintiff's testimony. Under Federal Rule of Civil Procedure 30(c), the examination and cross-examination of witnesses during deposition proceeds "as they would at trial." Federal Rule of Evidence 611(c) provides that "[o]rdinarily leading questions should be permitted on cross-examination." Because Defendants noticed Plaintiff's deposition, Plaintiff's counsel was cross-examining Plaintiff at the time Defendants' made the objections at issue. Accordingly, the use of leading questions by Plaintiff's counsel was permissible. Defendants' Motion to strike is
(continued...)

## I.       FACTUAL BACKGROUND

Plaintiff brings this lawsuit for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Texas Debt Collection Practices Act ("TDCPA"), TEX. FIN. CODE § 392.001 *et seq.*, and the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.41 *et seq.* Plaintiff alleges that Ford Motor Credit Company, LLC ("Ford") hired M&A, a company owned and operated by Myers, to collect a debt incorrectly believed to be owed to Ford by Plaintiff.  Plaintiff alleges that Myers and M&A engaged in illegal debt collection practices in trying to collect this debt.

On March 12, 2007, M&A mailed a demand letter signed by Myers to "John C Prohpet [sic]"[2] at "7122 Natchez Dr., Richmond, Texas 77469," attempting to collect a debt owed to M&A's client, Ford.[3]  It is undisputed that Plaintiff has never resided at this Natchez Drive address.[4]  As discussed *infra*, the parties contest the circumstances under which Plaintiff came into possession of this demand letter.

---

[1]      (...continued)
         **denied**.

[2]      Plaintiff testified that he spells his last name "Prophet" but the demand letter was addressed to "John C Prohpet [sic]."  Neither party focuses on this distinction and the Court merely acknowledges the discrepancy in the interest of clarity.

[3]      The letter is attached as Exhibit A to Plaintiff's Complaint [Doc. # 1].

[4]      It is undisputed that Plaintiff's son resides at this address.

Plaintiff alleges that, in violation of state and federal law, the demand letter falsely represented or implied that the communication was from an attorney.[5] Plaintiff further alleges that Defendants violated state and federal law by using false representations or deceptive means to attempt to collect the debt by misrepresenting the terms on which Ford would have agreed to settle the alleged debt.[6] Defendants have moved for summary judgment on all of Plaintiff's claims.

## II.   **LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[5] Section 1692e(3) of the FDCPA prohibits a debt collector from making a "false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

[6] Section 1692e(10) of the FDCPA prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts

and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III. ANALYSIS

### A. FDCPA Claims

Defendants argue that they are entitled to summary judgment on Plaintiff's FDCPA claims because Plaintiff does not have standing to sue. Plaintiff's FDCPA claims are entirely predicated on the March 12, 2007, demand letter sent to "John C Prohpet [sic]." Defendants argue that Plaintiff cannot assert FDCPA claims based on collection efforts directed solely to Plaintiff's estranged son, John Carter Prophet. More specifically, Defendants argue that while Plaintiff and his son share the same middle initial, "the letter could only reasonably be interpreted to be directed to Plaintiff's son, as it was mailed to Plaintiff's son's address and pertained to a debt incurred by Plaintiff's son."[7] In response, Plaintiff argues that third-party, non-debtors have standing to bring FDCPA claims.

A party seeking to invoke federal court jurisdiction must present an actual case or controversy. *See* U.S. CONST. Art. 3 § 2; *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III," and is not subject to waiver. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997); *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff has the burden of

---

[7]  Defendants' Motion [Doc. # 28], at 4.

establishing that he has standing to bring a claim under the FDCPA. *See Lujan*, 504 U.S. at 560–61; *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009).

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). While certain substantive provisions of the FDCPA only protect "consumers," which are defined as "any natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3), other substantive protections are not limited to "consumers." For example, § 1692k(a) provides that "[e]xcept as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person . . . ." 15 U.S.C. § 1692k(a) (emphasis added). The plain language of § 1692k does not limit recovery to "consumers," and courts have recognized that under certain circumstances, third-party, non-debtors have standing to bring claims under the FDCPA. *See, e.g.*, *Thomas v. Consumer Adjustment Co., Inc.*, 579 F. Supp. 2d 1290, 1298 (E.D. Mo. 2008); *King v. Trott and Trott P.C.*, 2008 WL 2063555, at *5 (E.D. Mich. Mar. 28, 2008); *Burdett v. Harrah's Kansas Casino Corp.*, 294 F. Supp. 2d 1215, 1227 (D. Kan. 2003); *Conboy v. AT&T Corp.*, 84 F. Supp. 2d 492, 504 n.9 (S.D.N.Y. 2000); *Flowers v. Accelerated Bureau of Collections, Inc.*, 1997 WL 136313, at *7–*8 (N.D. Ill. March 19, 1997); *Dewey v. Associated*

*Collectors Inc.*, 927 F. Supp. 1172, 1174 (W.D. Wis. 1996); *Dutton v. Wolhar*, 809 F. Supp. 1130, 1134–35 (D. Del. 1992); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 175 (W.D.N.Y. 1988); *West v. Costen*, 558 F. Supp. 564, 584 (W.D. Va. 1983); *Whatley v. Universal Collection Bureau Inc. (Florida)*, 525 F. Supp. 1204 (N.D. Ga. 1981).

Defendants do not dispute that under certain circumstances, third-party, non-debtors have standing to bring a claim under the FDCPA.[8] Rather, Defendants argue that Plaintiff lacks standing under the FDCPA because he has not raised a genuine fact issue that the allegedly illegal debt collection practices were directed at him. The Court agrees. "In passing the [FDCPA], Congress sought to protect consumers against abusive debt collection practices." *Dewey*, 927 F. Supp. at 1174. "It did not intend to provide damages to those who did not experience any abusive behavior." *Id.* A third-party, non-debtor does not have standing to assert a FDCPA violation based on collection efforts aimed at someone else. *See King*, 2008 WL 2063555, at *5; *Burdett*, 294 F. Supp. 2d 1215; *Dewey*, 927 F. Supp. at 1174.

The common factor among those cases in which a third-party, non-debtor is held to have standing to bring FDCPA claims is that the alleged debt collection practices were directed towards the third-party. By way of example, in *Thomas*, the

---

[8] Contrary to Plaintiff's reading of Defendants' Motion, Defendants do *not* argue that Plaintiff does not have standing to recover under the FDCPA because he is *not* a "*consumer*."

third-party found to have standing to sue had two direct phone conversations with the debt collector. *See Thomas*, 579 F. Supp. 2d at 1298. In *Whatley*, the parents of a debtor were found to have standing when the debt collector left threatening messages to the debtor and his parents on the family answering machine. *See Whatley*, 525 F. Supp. at 1206. In *Dutton*, the demand letter that formed the basis of the FDCPA claim was sent to the plaintiffs at their home address attempting to collect a debt owed by the plaintiffs' deceased parents. *Dutton*, 809 F. Supp. at 1132. In *West*, the mother of a debtor received, *addressed to her at her address*, a collection letter attempting to collect on her son's debts. *See West*, 558 F. Supp. at 584.[9]

Here, Plaintiff has failed to raise a genuine fact issue that the demand letter, the exclusive basis for his FDCPA claims, was directed to him. Plaintiff has not raised a genuine fact issue that the demand letter was sent to his home address and not the Natchez Drive address printed at the top of the demand letter. Plaintiff testified repeatedly that he did not know how he came into possession of the demand letter.[10]

---

[9] Alternatively, in some of the cases holding that a third-party, non-debtor had standing, the third-party had a special legal status that entitled him to bring a claim. *See, e.g., Riveria*, 682 F.Supp. at 175 (holding that an administratrix of an estate who was appointed after decedent received the demand letters at issue had standing to bring an action under the FDCPA); *see also Burdett*, 294 F.Supp.2d at 1227 ("Unless a plaintiff has a legal status which entitles her to stand in [debtor's] shoes, she ordinarily does not have standing to assert a FDCPA violation based on collection efforts aimed at her spouse."). Plaintiff, however, has not alleged that he has a special legal status entitling him to assert a FDCPA violation on behalf of his son, John Carter Prophet.

[10] Plaintiff testified:

(continued...)

In light of this clear and emphatic testimony, Plaintiff's later statement that "I think I saw it at the house without a doubt" is insufficient to raise a genuine material fact issue that the demand letter was directed to him. *See Delta*, 530 F.3d at 399 (holding that unsubstantiated assertions do not meet Plaintiff's burden to establish a genuine fact issue).

Defendants direct the Court to authority more analogous to the situation presented in the case at bar. In *Burdett* and in *Dewey*, the spouses of a debtor were found not to have standing to bring a claim under the FDCPA to challenge a debt collection practice. The demand letters in both cases were sent to the debtor's and third-party spouse's shared home address but were addressed exclusively to the debtor. Plaintiff attempts to distinguish *Burdett* and *Dewey* on the basis that the letters in these two cases were clearly directed to the plaintiffs' husbands, and not to the third-party spouses. Plaintiff argues that in this case the demand letter was addressed

---

[10]   (...continued)

> **Q**: How is it that you came to get this document if you don't live at [7122 Natchez Drive]?
> **A**: I believe it came to my address. But I don't—that's a good question. I don't know. I—it possibly was given to me by the mother-in-law who lives there as well. They were living with my mother—their mother-in-law, his mother-in-law.

Deposition of John C. Prophet, Exh. B to Defendants' Motion [Doc. # 28], at 7.

> So, I don't know if I found [the demand letter] at the house [at 7122 Natchez Drive] and picked it up or—or if [Plaintiff's son's mother-in-law] had actually given it to my wife or somebody had given it to my wife or whatever. I don't know how we actually got it.

Deposition of John C. Prophet, Exh. B to Plaintiff's Response [Doc. # 29], at 50.

to "John C Prohpet [sic]," which is Plaintiff's name.  The Court, however, is not persuaded that this is a distinction with a difference.  The Court concludes that sending a demand letter to an address where a purported FDCPA plaintiff never resided constitutes far less of a direct attempt to collect a debt than sending a demand letter to an address where a third-party, non-debtor actually lived, even if that demand letter was not addressed to the third-party.  Because the Court concludes that any allegedly illegal collection practices by Defendants were not directed to Plaintiff, he does not have standing to pursue his claims under the FDCPA.  Therefore, Defendants' Motion is granted with respect to Plaintiff's FDCPA claims.

### B.     TDCPA Claims

The TDCPA provides state law remedies for wrongful debt collection practices. The TDCPA provisions at issue make it unlawful for a debt collector to "represent[] falsely the status or nature of services rendered by the debt collector or the debt collector's business," TEX. FIN. CODE § 392.304(a)(14), to "us[e] a communication that purports to be from an attorney or law firm if it is not," TEX. FIN. CODE § 392.304(a)(16), to "represent[] that a consumer debt is being collected by an attorney if it is not," TEX. FIN. CODE § 392.304(a)(17), and/or to "us[e] any other false representation or deceptive means to collect a debt or obtain information concerning a consumer," TEX. FIN. CODE § 392.304(a)(19).  Plaintiff's TDCPA claims suffer from

the same deficiency as Plaintiff's FDCPA claims—Plaintiff does not have standing to pursue his TDCPA claims.

In support of his contention that he has standing under the TDCPA, Plaintiff directs the Court to the Sixth District Texas Court of Appeals decision in *Campbell v. Beneficial Finance Co. of Dallas*, 616 S.W.2d 373 (Tex.App.—Texarkana 1981, no writ). The facts in *Campbell*, however, are clearly distinguishable from those at bar. *Campbell* held that a third-party, non-debtor could maintain an action for actual damages sustained as a result of violations of the TDCPA. The court, however, explicitly premised this holding on the fact that "[t]he alleged abuses were committed directly against [plaintiff]." *Id.* at 374. It is in this context that the court held that "[a]ny person *against whom the prohibited acts are committed* may maintain an action for actual damages sustained as a result of those violations." *Id.* at 375 (emphasis added). For the reasons discussed above with respect to Plaintiff's FDCPA claims, Plaintiff has failed to raise a genuine fact issue that any of the alleged abuses were directed against him. Because Plaintiff does not have standing to pursue his claims under the TDCPA, Defendants' Motion is granted with respect to Plaintiff's TDCPA claims.

### C. DTPA Claim

Defendants argue that because Plaintiff's only allegations of violations of the

DTPA are the alleged violations of the TDCPA, Plaintiff's DTPA claims fail for the same reasons that the TDCPA claims fail.  This satisfies Defendants' burden to identify areas essential to Plaintiff's claims in which there is an absence of a genuine issue of material fact.  *See Reyna*, 401 F.3d at 349.  Plaintiff has not responded to Defendants' argument regarding the DTPA and therefore has failed to satisfy his burden to go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *See Littlefield*, 268 F.3d at 282.  Accordingly, Defendants' Motion is granted with respect to Plaintiff's DTPA claims.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish a genuine issue of material fact for trial on any of his claims.  It is therefore

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 28] is **GRANTED**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas this **21st** day of **May, 2009**.

_____
Nancy F. Atlas
United States District Judge